**LAW OFFICE OF J. BLACKNELL**
**JOVAN BLACKNELL (SBN 237162)**
**KELLEN DAVIS (SBN 326672)**
200 Corporate Pointe, Suite 495
Culver City, CA 90230
T.: 310.469.9117; F.: 310.388.3765

Attorney for Plaintiffs,
**DERRICK COOPER**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK COOPER<br><br>**Plaintiffs**,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTYMENT (LASD); DOES 1 through 10, inclusive,<br><br>**Defendants.** | **COMPLAINT FOR DAMAGES**<br><br>(1) Interference with Constitutional Rights (*Bane Act – Cal. Civ. Code §52.1*)<br>(2) Violation of Civil Rights (42 U.S.C. §1983)(*Unlawful Search and Seizure*)<br>(3) Negligence<br>(4) False Imprisonment<br>(5) Intentional Infliction of Emotional Distress<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff DERRICK COOPER alleges on information and belief as follows:

# PARTIES

1. At all relevant times mentioned in this Complaint, Plaintiff DERRICK COOPER (hereinafter also "DERRICK" or "Mr. Cooper" or "PLAINTIFF") was a resident of Los Angeles County, California.

2. DEFENDANT COUNTY OF LOS ANGELES (hereinafter, "COUNTY") was at all times relevant herein, and is, a public entity duly organized and existing under and by virtue of the laws of the State of California. DEFENDANT COUNTY is responsible for the funding, staffing, and direction of Los Angeles County Sheriff's Department (hereinafter also "LASD"); for the hiring, retention, training, and supervision of LASD employees; and for the observation of rights of LASD employees and persons subject to LASD jurisdiction.

3. DEFENDANT LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter, "LASD") was at all times relevant herein, and is, a public entity duly organized and existing under and by virtue of the laws of the State of California. DEFENDANT LASD is a branch of the County of Los Angeles, and the County delegates authority with respect to the hiring, retention, training, and supervision of LASD employees; and for the observation of rights of LASD employees and persons subject to LASD jurisdiction.

4. Hereinafter, all individual Defendants, including those presently named as DOE defendants, shall be collectively referred to as "LASD DEFENDANTS."

5. PLAINTIFFS are ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue them by such fictitious names. PLAINTIFFS will amend this Complaint to show the true names and capacities of said DOE Defendants when the same are ascertained. PLAINTIFFS are informed and believe,

and thereon allege, that each of the fictitiously named Defendants was in some manner liable and legally responsible, in that their conduct caused the damages and injuries set forth herein.

6. PLAINTIFFS are informed and believe and based upon such information and belief allege that each of the above-named parties was and is an agent, employee, principal, or employer of each of the remaining defendants and vice/versa. In addition, PLAINTIFFS are informed and believe and, on such basis, allege that the defendants named herein, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named defendants conspired with, and/or aided and/or abetted each of the remaining defendants in committing the acts herein alleged.

## JURISDICTION AND VENUE

7. This court has jurisdiction over this matter because all events at issue occurred in Los Angeles County and DEFENDANTS COUNTY and LASD are public entities existing and situated in Los Angeles County that operate exclusively in Los Angeles County which is within the Central District of California.

8. This court has personal jurisdiction over all DEFENDANTS because COUNTY and LASD are government entities existing in and by virtue of the laws of the state of California and the County of Los Angeles, and the remaining DEFENDANTS are agents or employees of COUNTY and LASD and, on information and belief, all reside in Los Angeles County. All of DEFENDANTS' official activities take place in Los Angeles County which is located within the jurisdiction of this court.

9. This court has subject matter jurisdiction because the controlling claims in the instant complaint arise under the laws, treatises, and/or Constitution of the United States.

10. This court has supplemental jurisdiction over Plaintiff's claims that do not arise under the laws, treaties, and Constitution of the United States because those claims arise from the same occurrence that gave rise to the causes of action that form the primary causes of action alleged here.

11. On April 21, 2023, PLAINTIFFS mailed a notice of government claim with the Los Angeles County Board of Supervisors pursuant to the California Tort Claims Act. *Cal. Gov. Code section 910-945.6*, which was received as a matter of law on April 26, 2023.

12. On June 10, 2023, Plaintiff's claim was denied by operation of law as a result of County's failure to respond within 45 days of receipt of the claim.

## COMMON ALLEGATIONS

13. On April 18, 2023 Derrick Cooper resided at 4109 E. Compton Boulevard in West Rancho Dominguez area of the City of Compton. Mr. Cooper was the tenant of the entire premises. The front of the property at this address was utilized for commercial purposes where Mr. Cooper operated the LA Wildcats Academy, which provides afterschool support, transportation, food, sports, music, and dance programs to youth of all ages. At the rear of the interior of the property was an apartment where Mr. Cooper resided, which was separated from the commercial space by a wall and door. There is only one point of ingress and egress to the property from E. Compton Blvd, which includes a white wooden door and black metal wire security door.

14. At approximately 4:00 a.m. on the above-referenced date, LASD Deputies whose identities are unknown at this time responded in multiple LASD black and white SUVs to the area of Mr. Cooper's residence. After looking around the exterior of the property, deputies approached the door to the property on E. Compton Blvd. Rather than knock on

the door to attempt to contact any occupants, one deputy reached his arm through a hole in the locked metal security gate and thereby unlocked the security gate from its interior.

15. After unlocking the security door, the deputy informed the other deputies that he had gained access to the property. After opening the security door, deputies opened the other door to the property, which, on information and belief, was unlocked. Having gained access to the interior of the property, all four deputies jointly entered the property with their guns drawn.

16. After entering the property, deputies made their way through the commercial portion toward the back to the door that led to Mr. Cooper's apartment. Officers communicated silently with one another and organized their approach to opening the door. One officer opened the unlocked door to the apartment, and the others followed with guns drawn and flashlights pointed into the apartment.

17. Once in Mr. Cooper's apartment, officers walked the few feet to cross the small kitchen area to the threshold of Mr. Cooper's bedroom door, which was open. Once they saw the sleeping Mr. Cooper, deputies pointed their guns and flashlights at him and began shouting commands.

18. Shocked, terrified, and confused, Mr. Cooper sprang up and immediately complied with the commands that were being shouted at him.

19. Deputies ordered that Mr. Cooper get out of the bed, at which point Mr. Cooper explained that he was unclothed from the waist down, all the while keeping his hands in the air, repeating that he was not resisting, and pleading for the deputies not to shoot him. Rather than provide Mr. Cooper with so much as a towel to cover himself, deputies

ordered Mr. Cooper to get up completely exposed then turned him around and placed him in handcuffs.

20. Although there were clothes and other articles all around the apartment that could have been used to cover Mr. Cooper's body, deputies walked Mr. Cooper in that state of undress out of his apartment and into the commercial area of the apartment.

21. At the time, Mr. Cooper's LA Wildcats Academy was in the process of relocating to another property, thus the commercial area of the property in question was covered with boxes and loose items of shirts, sweatsuits, jerseys, towels and other articles. Nonetheless, deputies walked the exposed Mr. Cooper through that area, literally stepping over and around hundreds of articles of clothing that could have covered him, then out of the front door onto Compton Boulevard, which is a main thoroughfare where untold numbers of people could have seen him or captured him nude on camera.

22. Deputies paraded Mr. Cooper, handcuffed, approximately 100 feet down E. Compton Blvd. to one of the LASD vehicles in which deputies arrived and placed Mr. Cooper in the back seat with nothing between his bare bottom and genitals and the hard, filthy surface of the seat.

23. Mr. Cooper continued to comply and never resisted the deputies, but repeatedly inquired why this was happening. Once Mr. Cooper was in the rear of the LASD vehicle, a deputy finally told him that they were allegedly responding to a call regarding a potential prowler in the area.

24. Mr. Cooper also continued to ask deputies to provide him with something to cover his exposed body, whether by retrieving something from his property or otherwise. The same deputy that spoke to Mr. Cooper about the reason for their response at some point stated

25. that he would provide him with something, but never did. Mr. Cooper remained nude from the waist down throughout the humiliating and terrifying encounter.

25. After a period of between 30 minutes and one hour, a deputy informed Mr. Cooper that they had responded to the wrong house and that he was free to leave. The vehicle door was opened for Mr. Cooper, a deputy removed the handcuffs. Humiliated by once again standing on a major thoroughfare with his genitals exposed and desperate for the encounter to end, Mr. Cooper said nothing more to the deputies and ran into his home.

## FIRST CAUSE OF ACTION– VIOLATION CIVIL CODE SECTION 52.1(B)
## INTERFERENCE WITH CONSTITUTIONAL RIGHTS

### By Plaintiff Derrick Cooper
### Against ALL DEFENDANTS:

26. PLAINTIFF hereby repeats, re-alleges and incorporates the allegations contained in all paragraphs above as thought fully set forth herein.

27. At all times relevant to this complaint, DEFENDANTS acted under color of law.

28. PLAINTIFF has, and at all times referenced in this Complaint had, a right, secured by the Constitution and laws of the United States and the Constitution and laws of the State of California, to be safe and secure in the unmolested integrity of body.

29. PLAINTIFF has, and at all times referenced in this Complaint had, a right, secured by the Constitution and laws of the United States and the Constitution and laws of the State of California, against search and seizure by law enforcement officers where the facts possessed by said officers objectively fail to furnish legal cause to believe that a crime is being, will be, or has been committed.

30. PLAINTIFF has, and at all times referenced in this Complaint had, a right, secured by the Constitution and laws of the United States and the Constitution and laws of the State of California, against warrantless entry into his home where probable cause and exigent circumstances are not present.

31. DEFENDANTS have, by way of physical force, threats, intimidation, or coercion as set forth herein interfered with or attempted to interfere with the Plaintiff's right to be safe and secure in the unmolested integrity of body through the conduct described herein.

32. DEFENDANTS have, by way of physical force, threats, intimidation, or coercion as set forth herein interfered with or attempted to interfere with PLAINTIFFS' right against unreasonable search and seizure.

33. The public entity DEFENDANTS named herein are vicariously liable for the actions of the individual defendants because those defendants were acting within the course and scope of their employment as employees of COUNTY and LASD at all times relevant herein.

34. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from obtaining the full enjoyment of life; and will incur medical expenses for injuries including but not limit4d to psychological treatment, therapy, and counseling.

## SECOND CAUSE OF ACTION – VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983)(UNLAWFUL SEARCH AND SEIZURE)

### By Plaintiff Derrick Cooper

### Against ALL DEFENDANTS

35. PLAINTIFF realleges and incorporates herein as if set forth in full, paragraphs 1 through 34, above.

36. At all times relevant herein, PLAINTIFF had, and has, a right, secured by the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, to be secure in their persons and property and free from unreasonable searches and seizures.

37. From the moment that LASD deputies woke Mr. Cooper up with guns drawn and flashlights in his face while shouting commands, PLAINTIFF was seized because a reasonable person would not feel free to leave or terminate the encounter. PLAINTIFF remained seized for between 30 minutes and an hour until deputies informed him that they went to the wrong house and that he was free to leave and removed the handcuffs from his wrists.

38. By breaking into PLAINTIFF's home by picking the lock, without a warrant, probable cause, or exigent circumstances, DEFENDANTS violated PLAINTIFF's right against unreasonable search and seizure with deliberate indifference and willful disregard for his civil rights under the Constitution and laws of the United States and State of California.

39. By seizing PLAINTIFF while he was violating no law through the display of force and actual use of force including officers making commands with several guns drawn, handcuffing PLAINTIFF, forcibly moving PLAINTIFF out of his bedroom and property

while nude from the waist down, DEFENDANTS violated PLAINTIFF'S right against unreasonable search and seizure with deliberate indifference and willful disregard for his civil rights under the Constitution and laws of the United States and the State of California.

40. DEFENDANTS acted deliberately and with knowledge that it was against the law to enter PLAINTIFF'S property and seize PLAINTIFF without legal cause.

41. DEFENDANTS acted under color of law and abused their authority as a law enforcement officers not only by entering PLAINTIFF's residence without a warrant, or probable cause and exigent circumstances, but effectuating a de facto arrest of PLAINTIFF without cause although he was not violating any law or resisting any lawful order by any officer and keeping PLAINTIFF in custody for an extended period of time while DEFENDANTS attempted to forge a justification for seizing PLAINTIFF.

42. DEFENDANTS' was so brazen, and all officers that were present for the unlawful actions resulting in PLAINTIFF's injuries were so familiar and comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of LASD and the COUNTY, under which LASD officers unreasonably seize citizens for reasons unrelated to any legitimate law enforcement objective, and other representatives of LASD and the COUNTY with knowledge of the unlawful conduct adhere to silence and refuse to intervene or report the unlawful activity.

43. Officers, support staff, supervisors, and legislating authorities within LASD and the COUNTY know of specific instances of this conduct undertaken as part of said custom and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetuation and

consequences of this custom. Indeed, on information and belief, a supervising officer was present for much of the incident at issue and was working in a supervisory capacity at the time in question, yet deliberately failed to intervene in or report the unlawful conduct that he witnessed. PLAINTIFF made a complaint of the misconduct to the supervising officer at the scene, and no person, including the supervising officer or his superiors, took any action to address the violations of PLAINTIFF'S rights.

44. PLAINTIFF further alleges on information and belief that the entire chain of command in LASD and the COUNTY, up to and including the Los Angeles County Sheriff and the Board of Supervisors of the County of Los Angeles, are aware of this practice or custom and knowingly approve of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

45. DEFENDANTS acted with impunity and without fear of punishment or reprimand from supervisors or any other authority. In addition to the presence of many officers including supervising officers, the conduct in question occurred on a public street in the presence of numerous civilian witnesses and/or cameras. All officers cooperated and helped facilitate the unlawful conduct of the others without question. In addition, LASD officers' uniforms are equipped with Body-Worn Cameras (BWC) capable of recording any incidents that occur while an officer is on duty. DEFENDANTS' actions despite the certainty that their conduct would be seen by fellow officers and civilians and likely captured on camera reflects the actors' knowledge of the custom or policy and their belief that superiors or other officials would allow, affirm, or not punish them for such conduct.

46. On information and belief, the unlawful seizure to which PLAINTIFFS were subjected is a routine component of the custom within the LASD and COUNTY, under which

countless other individuals have been, and continue to be, victims of unlawful seizures causing serious and permanent injuries and subjected to similar threats, intimidation, and abuse to which PLAINTIFF was subjected in violation of his civil rights.

47. As a direct and proximate result of DEFENDANTS' actions pursuant to its established practice, policy, or custom, PLAINTIFF was deprived of his constitutional rights, and sustained severe financial, mental, and emotional damages in an amount subject to proof at trial.

48. Plaintiff is informed and believes that DEFENDANTS acted knowingly and willfully, with malice and oppression and with the intent to harm PLAINTIFF. Therefore, PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring them and others from such conduct in the future.

## THIRD CLAIM – NEGLIGENCE

### By Plaintiff Derrick Cooper

### Against ALL DEFENDANTS:

49. PLAINTIFF reincorporates and realleges as if set forth fully herein, paragraphs 1 through 48, above.

50. All DEFENDANTS had a duty to exercise reasonable care in preventing citizens subject to LASD jurisdiction from harm where said citizens had not committed any crime and the facts surrounding the circumstances did not give rise to cause for LASD deputies to believe that a crime had been, was being, or was about to be committed.

51. LASD deputies had a duty not to pick the lock of and enter the private property of any citizen without probable cause and exigent circumstances.

COMPLAINT FOR DAMAGES

52. COUNTY and LASD agents working in a supervisory capacity had a duty to adequately train all representatives and employees that interact with employees that are likely to come in personal contact with members of the community during the course and scope of their employment as police officers.

53. By failing to adequately train all representatives and employees that are likely to come in contact with members of the community and exercise the authority vested in police officers against said members of the community, DEFENDANTS breached their duty of care.

54. It was foreseeable that PLAINTIFF would be injured by LASD deputies' breach of duty by picking his lock, entering his private property, and seizing him by waking him up with multiple guns pointed at his face in the middle of the night then handcuffing him naked and marching him onto a major thoroughfare in the same state of undress without probable cause and the absence of exigent circumstances.

55. It was foreseeable that PLAINTIFF would be injured by the failure to adequately train LASD deputies that come in contact with members of the public because deputies patrol the streets armed with numerous weapons including firearms and possess the inherent ability to intimidate and forcibly violate the rights of members of the public if not adequately trained on when to exercise authority to detain individuals and/or when to intervene when other officers are acting improperly.

56. A reasonable peace officer would know that they are likely to violate a citizen's rights by picking the lock to his home in the middle of the night and arresting him with the force of guns pointed at his face while he slept and detaining him, naked in public, in the middle of the night.

57. A reasonable party charged with training LASD officers would know that officers are likely to violate the constitutional rights of citizens within its jurisdiction if they are not properly trained as to the circumstances that furnish lawful grounds to enter a private residence and detain or arrest an individual.

58. At all times relevant herein, DEFENDANTS, including Doe Defendants, had a duty to adequately train its officers on circumstances that give rise to lawful grounds to enter a private residence without a warrant.

59. At all times relevant herein, DEFENDANTS, including Doe Defendants, had a duty to adequately train its officers on circumstances that give rise to lawful grounds to seize a private citizen at gunpoint.

60. DEFENDANTS also had a duty not to parade an arrested or detained individual onto a major public thoroughfare naked where the circumstances did not give rise to such drastic, humiliating action.

61. On information and belief, DEFENDANTS breached the duty to sufficiently train its officers, due to the manifestations of negligent and inadequate training, including but not limited to the following:

   a. Officers' joint actions in picking the lock and entering PLAINTIFF's property without a warrant or probable cause and exigent circumstances;
   b. By entering the wrong property pursuant to the alleged call that they received about a possible prowler;
   c. Failing to intervene when one or more officers were taking steps to illegally detain PLAINTIFF;

    d. Placing PLAINTIFF in handcuffs without any reasonable suspicion of criminal wrongdoing for an extended period of time;

    e. Forcibly moving PLAINTIFF onto a major public street and into a police cruiser without clothing him or allowing him to clothe himself from the waist down;

62. DEFENDANTS' failure to sufficiently train its agents, employees, or representatives was the proximate cause of PLAINTIFF suffering indignities and injuries because it was foreseeable that an individual would be placed at risk of grievous harm, up to and including death, when his constitutional rights, safety, and well-being depend on inadequately trained individuals.

63. DEFENDANTS' conduct in picking the lock to PLAINTIFF's property and entering the property without a warrant then seizing PLAINTIFF naked at gunpoint was the proximate cause of PLAINTIFF's injuries because it was foreseeable that an individual would be placed at risk of grievous physical harm including death and suffer emotional and psychological harm as a result of being subject to such danger and indignity.

64. DEFENDANTS' failure to sufficiently train its employees or representatives was the direct cause of PLAINTIFF'S injuries because but for DEFENDANTS' inadequate training, deputies would not have broken into PLAINTIFF's home; PLAINTIFF would not have been illegally detained; would not have been handcuffed; an unlawful search would not have occurred; PLAINTIFF would not have been publicly humiliated by being taken on a public street handcuffed and naked from the waist down; and PLAINTIFF would not have been.

65. DEFENDANTS' conduct in picking the lock to PLAINTIFF's property and entering the property without a warrant then seizing PLAINTIFF naked at gunpoint was the direct

cause of PLAINTIFF'S injury because but for DEFENDANTS' conduct, PLAINTIFF would not have suffered the injuries as described herein.

66. As a result of DEFENDANTS' breach of its duty of care, PLAINTIFF is entitled to recover damages for his injuries in an amount according to proof.

## FOURTH CAUSE OF ACTION– FALSE IMPRISONMENT

### By Plaintiff Derrick Cooper

### Against ALL DEFENDANTS:

67. PLAINTIFF reincorporates, and reallege as if set forth fully herein, paragraphs 1 through 66, above.

68. By engaging in the conduct described herein, DEFENDANTS unlawfully and intentionally imprisoned PLAINTIFF and thus deprived PLAINTIFF of his liberty without lawful privilege or authority.

69. By engaging in the conduct described herein, DEFENDANTS acted with express knowledge that no legal cause existed to seize PLAINTIFF, but intentionally deprived PLAINTIFF of his liberty against his will despite such knowledge.

70. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFFS suffered the damages including but not limited to indignation, fear, stress, anxiety, stigma, and humiliation.

71. The public entity DEFENDANTS named herein are vicariously liable for the actions of the individual defendants because those defendants were acting within the course and scope of their employment with COUNTY and LASD at all times relevant herein.

72. On information and belief, the individual DEFENDANTS, including DOES 1 through 10, inclusive, acted knowingly, willfully, and maliciously with reckless disregard for the

substantial risk of severe harm to PLAINTIFFS. Therefore, PLAINTIFFS are entitled to an award of punitive damages against the individual defendants, not any public entity, in order to punish those defendants and to deter them and others from such conduct in the future.

**FIFTH CLAIM - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**By Plaintiff Derrick Cooper**

**Against ALL DEFENDANTS:**

73. PLAINTIFFS hereby repeat, re-allege and incorporate the allegations contained in paragraphs 1 through 72, above, as if fully set forth herein.

74. Through the acts described herein, DEFENDANTS engaged in conduct that was extreme and outrageous, beyond the scope of conduct that which is acceptable in a civil society, and that DEFENDANTS engaged in such conduct wantonly and for the purpose of harassing, bullying, and harming PLAINTIFF with knowledge that they had no legal cause for their actions.

75. PLAINTIFF is informed and believes that DEFENDANTS engaged in this conduct of knowingly and with the intent to cause him to suffer extreme emotional distress, or with reckless disregard for the substantial certainty that they would suffer extreme emotional distress as a result of DEFENDANTS' conduct.

76. As a result of this intentional, extreme, and outrageous conduct, PLAINTIFFS suffered extreme emotional distress including but not limited to extreme grief, fear, terror, frustration, helplessness, confusion, and anxiety.

77. The public entity DEFENDANTS named herein are vicariously liable for the actions of the individual defendants because those defendants were acting within the course and

scope of their employment as employees of COUNTY and LASD at all times relevant herein.

78. PLAINTIFFS are informed and believes that DEFENDANTS and DOES 1 through 10, inclusive, acted knowingly and willfully, with reckless disregard for the substantial risk of severe harm Plaintiff. Therefore, Plaintiff is entitled to an award of punitive damages against the individual defendants, not any public entity, in order to punish those defendants and to deter them and others from such conduct in the future.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of action as follows:

1. Plaintiff demands a jury trial as to the issues triable;
2. General damages and special damages according to proof;
3. Punitive damages against the individual defendants, and not any public entity;
4. Attorney's fees pursuant to 42 U.S.C. §1983, California Civil Code §52.1, and any other appropriate statute;
5. Injunctive relief, both preliminary and permanent, as allowed by law;
6. Costs of suit incurred herein; and
7. Such further relief as the Court deems just and proper.

Dated: December 8, 2023                     Respectfully submitted,

                                            LAW OFFICE OF J. BLACKNELL

                                            By: *Kellen J. Davis*
                                            KELLEN DAVIS
                                            Attorney for Plaintiff
                                            DERRICK COOPER

COMPLAINT FOR DAMAGES

18

